IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

JANA M. WYATT, )
)
         Plaintiff, )
)
v. ) Case No. 09-1335-WEB
)
MICHAEL ASTRUE, )
Commissioner of Social Security, )
)
         Defendant. )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying disability insurance benefits. Plaintiff claims to have been disabled since January 1, 1998 as a result of fibromyalgia, chronic fatigue and depression. The Administrative Law Judge determined Plaintiff is not under a disability and is able to perform past relevant work.

I. General Legal Standards

The standard of review is set forth in 42 U.S.C. § 405(g), "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court reviews the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004). To determine if the Commissioner's decision is supported by substantial evidence, the court does not reweigh the evidence. Cowan v. Astrue, 552 F.3d 1182, 1185 (10th

Cir. 2008). However, the court must scrutinize the entire record to determine if the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D.Kan. 1992).

An individual is under a disability if the individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The impairment must be to the extent that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id..

The Commissioner employs a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 404.1520, 416.920, Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment meets or equals the severity of any impairment in the Listing of Impairments. 20 C.F.R. part 404, subpart P, appendix 1; Id. at 750-51. If the claimant does not meet or equal a listed impairment, then the Commissioner assesses her RFC to be used in both step four and step five. 20 C.F.R. § § 404.1520(e), 416.920(e).

At step four and step five, the Commissioner evaluates whether claimant can perform past relevant work, and whether she is able to perform other work in the economy. Williams, 844 F.2d at 751. The burden is on the claimant to prove a disability that prevents performance of

past relevant work in step one through step four. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). At step five, the burden shifts to the Commissioner to show jobs in the national economy within the claimant's capacity. Id.

II. Discussion

The Plaintiff raises four issues. First, Plaintiff argues the ALJ should have ruled that the Plaintiff's depression was a severe impairment at step two of the evaluation process, and the ALJ erred in not considering depression in the RFC findings. Second, Plaintiff argues the ALJ erred in relying on the opinion of a non-examining State Agency physician in determining the Plaintiff's limitations. Third, Plaintiff argues the ALJ erred in dismissing the opinions of treating sources. Finally, Plaintiff argues the ALJ erred in not considering the demands of the Plaintiff's past work in assessing whether she was disabled at step four of the evaluation process. The Commissioner argues that the ALJ properly evaluated the severity of the Plaintiff's impairments, the ALJ properly considered the medical opinions in the record, there is substantial evidence in the record to support the ALJ's determination of the Plaintiff's RFC, and the ALJ properly found the Plaintiff could return to past relevant work.

a. Depression

    1. Standard

The Plaintiff argues that the ALJ erred because the ALJ did not conclude that her depression was severe at step two, and the ALJ did not consider the Plaintiff's depression in determining the RFC. The ALJ must apply a "special technique" when dealing with a claim of mental impairment. See 20 C.F.R. §§ 404.1520a, 416.920a. Once a claimant has established a medically determinable mental impairment, the ALJ must "rate the degree of functional

3

limitation resulting from the impairment(s)." Id. §§ 404.1520a(b)(2), 416 920a(b)(2). The ALJ is required to rate the claimant's limitations in four broad functional areas; activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then uses the ratings in the limitations to determine the severity of the mental impairments. Id. §§ 404.1520a(d), 416.920a(d). The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas. Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

If the ALJ commits error at step two of the sequential evaluation concerning one impairment, it is usually harmless when the ALJ finds another impairment severe and proceeds to the remaining steps of the evaluation. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). An ALJ's RFC determination must consider both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(e).

2. The ALJ's Decision

The ALJ found the Plaintiff's only severe impairment was fibromyalgia. (Doc. 6-2, p. 17). The ALJ found that the "Claimant's symptoms related to depression are non-severe based on the lack of evidence showing that they cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this find (sic) the undersigned considered and relied upon the psychiatric review technique (PRTF) assessments of September 20, 2006 (Exhibits 9F and 10F)." (Doc. 6-2, p. 17). The ALJ then discussed the four functional areas and the reports of Michael H. Schwartz, Ph.D., and the report of Norman S. Jessop, Ph.D. The ALJ found that the Plaintiff's "symptoms caused significant only mild restrictions in activities of daily living, no difficulties in maintaining social

4

functioning, and mild difficulties in maintaining concentration, persistence, or pace with no repeated episodes of decompensation, of an extended duration under criteria set forth in 20 CFR 404.1520(c). (Exhibit 16/F 11). Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1))." (Doc. 6-2, p. 18).

The ALJ stated that the RFC assessment reflects the limitations of the mental function. In discussing the RFC, the ALJ stated,

> "When evaluated by Dr. Schwartz, this psychologist concluded that the claimant did not have any mental impairments. After conducting a clinical interview and cognitive tests like serial subtractions and additions, object and digital recall, reverse recitation procedures, and interpreting sayings, comprehension questions, and similarities, Dr. Schwartz concluded that the claimant was functioning at an average range of intelligence without any memory problems other than associated with simple mathematics. In evaluating the claimant, Dr. Schwartz concluded based on the claimant's description of her work that the intensity of her employment rather than any psychological impairment caused difficulties with attention, concentration, and short term memory. As a result, Dr. Schwartz concluded that the claimant would be able to remember work location and procedures, understand and follow simple instructions, and perform competitive employment since she had adequate attention, concentration, and short term memory for simple tasks. (Exhibit 12F)."

The ALJ also found that the Plaintiff's report of the severity of the symptoms was not supported by the record. The ALJ discussed the opinion of a State psychologist who conducted a psychiatric review technique assessment in March 2007. Dr. Jessop, the State agency psychologist, concluded that "claimant would not have any restrictions based upon mental impairments and that her difficulties with concentration and mental clarity would have previously related to the intensity of employment." (Doc. 6-2, p. 20). The ALJ did not give controlling weight to Dr. Farrand, Plaintiff's psychologist, because "the opinions of the

5

psychologist were not supported by a record of care." (Doc. 6-2, p. 22). It should be noted that the ALJ recognized that Dr. Farrand concluded "the claimant would be cognitively limited in performing fulltime work by marked (seriously) restrictions in performing activities within a schedule, maintaining regular attendance and punctuality, and completing a normal workday; and by moderate restrictions limiting her ability to maintain attention and concentration for extended periods of time (Exhibit 42F)." (Doc. 6-2, p. 21).

    3. <u>Analysis</u>

The ALJ followed the special technique in determining that Plaintiff's depression was not a medically determinable mental impairment. The ALJ found the Plaintiff's mental impairment caused only mild limitations in the first three areas, and no episodes of decompensation, therefore, the mental impairment was nonsevere. "The decision (of the ALJ) must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(4). The decision of the ALJ did set forth specific findings as to the degree of limitation in each of the four broad functional areas. (See Doc. 6-2, p. 18).

For an impairment to be severe, it must significantly limit physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ did not find the Plaintiff's mental impairment to limit her ability to do work activities. The ALJ found mild restrictions in daily living, and mild difficulties in maintaining concentration, persistence, or pace. Mild findings in the first three categories and none in the fourth category will generally result in a finding that

6

there is not a severe mental impairment unless there is other evidence in the record. 20 C.F.R. § 404.1520a(d)(1). There is significant evidence in the record to support the ALJ's finding that the Plaintiff's depression was not severe.

The Plaintiff also argues that the ALJ erred when her non-severe depression was not considered in combination with her severe fibromyalgia in determining her RFC. In considering the RFC, the ALJ is required to consider the effect of all the claimant's medically determinable impairments, severe and non-severe. Hill v. Astrue, 289 Fed.Appx. 289, 292 (10th Cir. 2008). The ALJ should consider a claimant's abilities to meet the demands of work despite the impairments. 20 C.F.R. § 416.945. The ALJ should consider the claimant's physical abilities, mental abilities, and the ability to tolerate various work environments. Id., § 416.945(b, c, d). It is clear the ALJ did consider the claimant's depression in determining the RFC. The ALJ considered the opinion of Dr. Schwartz, finding that the Plaintiff did not have any mental impairments. The ALJ also considered the opinion of Dr. Farrand, in which she states that the Plaintiff's disability is "primarily a medical one rather than a psychological one." (Doc. 6-9, p. 109). The ALJ did not give controlling weight to Dr. Farrand, as her opinion was not supported by a record of care, and her opinion was not persuasive. (Doc. 6-2, p. 22). The ALJ did not err in finding that the Plaintiff's depression was not severe, and the ALJ did not err in the RFC assessment as he did consider the Plaintiff's depression.

b. State Agency Physician

The Plaintiff argues the ALJ erred in the RFC determination because he did not properly consider the Plaintiff's depression, chronic fatigue syndrome, and eye disorder. In support of this argument, the Plaintiff states that the ALJ did not provide a summary of medical findings,

7

and the ALJ did not consider medical records obtained after August 2007. The Plaintiff also provides additional support for this argument by stating that the ALJ did not consider the Plaintiff's mental impairments in combination with the mental limitations resulting from her physical condition. The Plaintiff also argues that the ALJ relied too much on the opinion of a non-examining State Agency physician whose opinion conflicts with that of a treating physician.

    1. Standard

The ALJ's RFC assessment must be supported by the medical records. The ALJ must develop the record by obtaining pertinent, available medical records. Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). The ALJ must consider all relevant medical evidence in the record. SSR 06-03p. However, there is no rule that the ALJ must summarize all the medical findings. An ALJ is not required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the evidence that supports his decision, and the "uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects." Id. at 1010.

In determining the claimant's RFC, the ALJ must consider any medical opinions about what the claimant can do. 20 C.F.R. § 404.1545(a)(3). The ALJ must consider all relevant evidence, observations of physicians, and the plaintiff's testimony. Noble v. Callahan, 978 F.Supp. 980, 987 (D.Kan. 1997); 20 C.F.R. §§ 404.1545, 404.945. The RFC assessment must contain both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(e).

The ALJ is not bound by State Agency physicians, but the findings of these physicians

must be treated as expert opinion evidence of non-examining sources. SSR 96-6p, 1996 WL 374180, at *1. The ALJ must also explain the weight given to the state agency physician. Id. "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." Hamlin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004). The ALJ must point to evidence to discount the treating physician's opinion.

   2. ALJ's Decision

The ALJ's opinion related to the Plaintiff's depression, discussed in the prior section, will not be restated in this section, but is incorporated. The ALJ additionally found: "The record shows that the claimant had at the time of protective filing in November 2006 had a seven year history of multiple sclerosis complicated by chronic fatigue and fibromyalgia; a three year history of optic neuritis with retina detachment and blurry vision that had slightly improved; soft tissue discomfort, bladder problems, and increasing dizziness; and some difficulties with attention, concentration, and short term memory (Exhibit 1F through 11F)." (Doc. 6-2, p. 20). The ALJ noted that Dr. Greiner concluded "that the claimant had never been hospitalized for exacerbated symptoms from multiple sclerosis and / or fibromyalgia; had only slightly diminished range of motion of the lumbar spine without paravertebral muscle spasms; and had full range of motion of other joints, normal gait and station, and no difficulty in performing orthopedic maneuvers." (Doc. 6-2, p. 20). The ALJ found "Dr. Greiner concluded that the claimant was able to read letters, although reported as blurry, after results following a funduscoptic examination with normal results (Exhibit 13F)." (Doc. 6-2, p. 20).

The ALJ found that the claimant's allegations of disability were inconsistent with the RFC assessment. The ALJ found the Plaintiff's severity of her symptoms "is not supported by

9

objective and other medical evidence including the opinions of a State agency personnel who conducted a psychiatric review technique (PRTF) assessment in March 2007 (Exhibit 16F) and physical residual functional capacity assessments in March 2007 (Exhibit 17F) and August 2007 (Exhibit 27F)." (Doc. 6-2, p. 20). In support of this finding, the ALJ relied on the opinion of a state agency physician:

> "A State agency physician, C.A. Parsons, M.D., conducted the second assessment and concluded from the record that the claimant could perform a range of sedentary work or work requiring her to lift 10 pounds occasionally or 10 pounds frequently, stand and /or walk at least two hours in an 8 hour workday, and sit about six hours in an 8 hour workday. Dr. Parsons further concluded that the claimant would be restricted by postural limitations and environmental limitations involving exposure to extreme cold and vibration (Exhibit 27F)..... Dr. Parsons relied upon objective medical evidence from claimant's primary care providers which showed that the claimant had been thoroughly examined for multiple sclerosis in the past but never diagnosed as suffering multiple sclerosis although there was a magnetic resonance image (MRI) taken in March 2006 that showed some periventricular white matter changes....Dr. Parsons also considered objective medical evidence that the claimant was never diagnosed as suffer optic neuritis (Exhibit 27F) and reports by the Vijay Mahtre, M.D., claimant's rheumatologist, in July 2007 that while the claimant was suffering fibromyalgia and restless leg syndrome, her deep tendon reflexes, motor function, and sensations (DTRs) were all intact (Exhibits 27F and 31F)....Dr. Parsons considered claimant's report of a past retinal detachment, but her examination in June 2007 by Jeanne F. Klopfenstein, O.D., indicated that the claimant had corrected visual acuity of 20/20 in each eye with normal fields of vision (Exhibit 19F).
> Subsequently, the claimant has been under the care of numerous treating sources through August 2008....Dr. Cooper concluded that the claimant's would be slightly limited by correctible visual acuity of 20/20 in the right eye and 20/25 in the left eye, both Dr. Mahtre and Dr. Farrand were more supportive of the claimant's allegations." (Doc. 6-2, p. 21).

The ALJ discussed Dr. Mahtre's recommended limitations, which were more restrictive than the RFC the ALJ assigned. The ALJ also reviewed the claimant's daily activities, finding that the claimant's daily activities were consistent with the RFC. The ALJ noted that the Plaintiff reported more daily activities at the time of filing than in May, 2007. However, the ALJ

10

found that "the claimant's activities continued to be consistent with a range of sedentary work although she was reporting some difficulty with bathing and dressing while continuing to assist her daughter with homework, feed her pets, and engage in household chores, travel, shopping, hobbies/interests, and social activities at levels previously reported (Exhibit 11E)." (Doc. 6-2, p. 22). At the hearing, the Plaintiff testified that she did not care for the garden or the yard, and she had reduced the number of household chores. (Doc. 6-2, p. 22).

Finally, the ALJ considered the Plaintiff's work history, and found that the Plaintiff worked full time for Kansas State University until December 20, 2006, and her salary was over $50,000 at the time she quit. The ALJ found the Plaintiff's work history did not "support her credibility about the inability to work full-time at the range of capacity expressed above." (Doc. 6-2, p. 23).

> "After a thorough review of the evidence of record including Exhibits 1E through 17E and 1F through 45F, including the claimant's allegations, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant has been capable of performing work consistent with the residual functional capacity established in this decision. In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p and 96-6p." (Doc. 6-2, p. 23).

3. <u>Analysis</u>

The Plaintiff argues that the ALJ did not properly consider evidence of depression, chronic fatigue syndrome, and eye disorder in assessing the Plaintiff's RFC. The court notes that the Plaintiff does not argue that the ALJ did not properly consider evidence of fibromyalgia in determining the RFC. However, Plaintiff mentions in her arguments that the ALJ may not use a

11

lack of laboratory findings related to fibromyalgia as evidence that the disease is not as severe as reported. Gilbert v. Astrue, 231 Fed.Appx. 778, 783-84 (10th Cir. 2007). Fibromyalgia cannot be proved by objective test findings. Welch v. UNUM Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004). In addressing complaints of fibromyalgia, the ALJ must evaluate the plaintiff's pain testimony, and must closely link findings to substantial evidence in the record, such as steps that plaintiff has taken to alleviate the pain, get treatment, medications, doctor visits, and medical relief. See Moore v. Barnhart, 114 Fed.Appx. 983, 991-94 (10th Cir. 2004). The ALJ determined that fibromyalgia was a severe impairment. However, Plaintiff does not argue that the ALJ erred in the RFC assessment based on the a failure to consider the Plaintiff's fibromyalgia, rather, Plaintiff argues the ALJ did not properly consider the evidence of chronic fatigue syndrome, depression, and her eye disorder.

As mentioned above, the ALJ discussed the Plaintiff's depression in the RFC determination. The ALJ discussed the Plaintiff's eye disorder, although he discussed it in assessing Dr. Parsons' opinion. However, the information on which Dr. Parsons and the ALJ relied did not differ from the medical record as a whole. Dr. Parsons relied on Dr. Klopfenstein's report that the Plaintiff had visual acuity of 20/20 in each eye with normal fields of vision. (Doc. 6-2, p. 21). Dr. Cooper completed a Visual Impairment Sheet on August 18, 2008, which stated "Far Acuity, Right Eye 20/20 with correction, Left eye 20/25 with correction." (Doc. 6-9, p. 113). Dr. Cooper did not fill out the section in the Impairment Sheet that covered blurred vision, tearing, or any other problems. Id. The ALJ properly considered the Plaintiff's eye disorder in assessing the Plaintiff's RFC.

Plaintiff argues that the ALJ did not consider the Plaintiff's medical records after 2007.

However, the ALJ's opinion shows that all medical evidence in the record was taken into consideration. Dr. Greiner evaluated the Plaintiff on February 24, 2007. (Doc. 6-9, p. 28-31). Dr. Greiner found the Plaintiff suffered from multiple sclerosis, fibromyalgia, chronic fatigue. (Doc. 6-9, p. 30). Dr. Greiner assessed the Plaintiff's range of motion, gait, station, strength, and vision. Dr. Carlson completed a physical residual functional capacity assessment on March 12, 2007, noting the Plaintiff's history of fibromyalgia, and finding very few limitations. Dr. Subbanna assessed the Plaintiff, finding that the Plaintiff's diagnosis of fibromyalgia was correct, and Plaintiff should be treated symptomatically. (Doc. 6-10, p. 5-6). Dr. Mhatre, a treating physician, concluded that the Plaintiff had fibromyalgia with chronic pain and chronic fatigue, as well as restless leg syndrome. (Doc. 9-10, p. 16). Dr. Mhatre stated that the Plaintiff was totally disabled from any gainful employment. (Doc. 9-10, p. 17). Dr. Mhatre completed a medical source statement - physical, finding serious limitations in all areas. (Doc. 9-10, p. 25-26). Dr. Moiser also concluded that the Plaintiff had fibromyalgia with chronic pain and fatigue, and recommended a number of limitations, although the limitations recommended by Dr. Moiser were more severe than the limitations of Dr. Mhatre. (Doc. 9-10, p. 28). Dr. Moiser also opined that the Plaintiff suffered from a disability. (Doc. 9-10, p. 28). The ALJ discussed these medical opinions in the RFC assessment. The ALJ recognized that the Plaintiff was diagnosed with fibromyalgia, the ALJ discussed Dr. Greiner's conclusions, Dr. Mhatre's conclusions, and noted that he reviewed all the medical records. The Plaintiff's allegation that the ALJ did not consider the Plaintiff's diagnoses of chronic fatigue and eye disorder is not supported by the record. The ALJ considered the Plaintiff's diagnosis and the medical records to support the diagnosis.

13

The Plaintiff also argues that the ALJ relied too much on the state agency physician in assessing the RFC. The ALJ must explain the weight given to the state agency physician when that opinion differs from a controlling or treating source. 20 C.F.R. § 416.927(f)(2)(I). The ALJ should consider the treating physician's opinion, and explain why he rejected it in favor of other non-examining opinions. Clifton, 79 F.3d at 1009-1010. The ALJ stated "after considering the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p, the undersigned has not given controlling weight to opinions of Doctors Cooper, Mahtre, and Farrand since the opinions of the ophthalmologist and rheumatologist were not supported by treatment and the opinions of the psychologist were not supported by a record of care." (Doc. 6-2, p. 22). As discussed in the section below, the ALJ did give more weight to the state agency physician's opinion. However, the ALJ explained the weight given to each physician and cited to medical evidence in support.

c. Treating Sources

The Plaintiff argues the ALJ did not properly weigh the opinion testimony of Dr. Mhatre and Dr. Farrand. The Plaintiff argues that a treating physician's opinion should be given controlling weight if it is well supported and is not inconsistent with substantial evidence in the record. Further, the Plaintiff argues the ALJ did not provide specific and legitimate reasons for not giving the opinions controlling weight. The defendant argues that the ALJ points to specific medical evidence that is inconsistent with Dr. Mhatre's opinion, and that Dr. Farrand opined that the Plaintiff's limitations were medical rather than psychological.

1. Standard

A treating source opinion is entitled to controlling weight when it is supported by

medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *2. If the opinion is well supported, then the ALJ must confirm that the opinion is consistent with other substantial evidence in the record. Id. If the opinion does not meet either one of these requirements, the opinion is not entitled to controlling weight. Id. A treating source opinion that is not entitled to controlling weight is still entitled to deference. Id. at 1300-01. If a treating source is not given controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(d). The factors were set forth in Watkins as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and the extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301. The record must show the ALJ considered all the factors, although the ALJ is not required to explicitly discuss all the factors. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007); 20 C.F.R. § 416.927(d)(2). If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins at 1301.

   2. ALJ's Decision

The ALJ discussed Dr. Mahtre's conclusions and limitations, in which he opined that the Plaintiff would not be able to lift more than 20 pounds, could not stand or walk more than one hour a day, in 15 minute increments, could not sit for more than one hour in 15 minute increments, and limited the Plaintiff in the ability to climb, balance, stoop, kneel, crouch, crawl or reach. (Doc. 6-2, p. 21). The ALJ found Dr. Farrand concluded the Plaintiff was cognitively

15

limited in performing activities within a schedule, maintaining regular attendance and punctuality, and completing a normal workday; and by moderate restrictions for attention and concentration. (Doc. 6-2, p. 21). The ALJ found,

> "After considering the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p, the undersigned has not given controlling weight to opinions of Doctors Cooper, Mahtre, and Farrand since the opinions of the ophthalmologist and rheumatologist were not supported by treatment and the opinions of the psychologist were not supported by a record of care. The undersigned additionally considered whether these sources should be recontacted since their opinions were not accorded controlling or substantial weight, but has determined that recontact is not necessary since the undersigned has found the information received from these sources to be adequate for consideration but are not persuasive on the level or degree of claimant's residual functional capacity."
> (Doc. 6-2, p. 22).

Finally, the ALJ stated that he considered all the evidence in the record, including the exhibits of the treating physicians. (Doc. 6-2, p. 23).

### 3. Analysis

The ALJ discussed the treatment of the plaintiff by Dr. Mahtre and Dr. Farrand, and recognized that they were treating sources. The ALJ did not give controlling weight to the opinions of Dr. Mahtre and Dr. Farrand. The ALJ stated that Dr. Mahtre's opinion was not supported by a treatment record, and Dr. Farrand's opinion was not supported by a record of care. In making this determination, the ALJ considered Dr. Mahtre's report that although the plaintiff was suffering from fibromyalgia and restless leg syndrome, her deep tendon reflexes, motor function and sensations were all intact. The ALJ noted that the plaintiff had never been diagnosed as suffering from optic neuritis, and plaintiff's retinal detachment had been corrected. The ALJ also relied on other medical evidence that the Plaintiff had not been hospitalized for multiple sclerosis or fibromyalgia, and only had a slightly diminished range of motion. Also,

16

medical evidence in the record opined that the mental limitations were based more on the Plaintiff's ability to perform her job rather than the psychological impairments, and that any mental impairments are most likely physical related, not mental related.

The ALJ stated that Dr. Mahtre and Dr. Farrand's opinions were not given controlling or substantial weight, however, the opinions of Dr. Schwartz and Dr. Greiner were given substantial weight. The ALJ set forth contradictory and substantial medical evidence to support his findings. The ALJ determined that there was not medical evidence to support the treating physicians' opinion that plaintiff's impairments and limitations rendered her disabled. The ALJ's opinion throughly discussed all the relevant medical evidence in the record, and specifically set forth the medical evidence that contradicted the treating opinions. The ALJ did not err in the weight he gave the treating opinions.

d. Past Work

The Plaintiff argues that the ALJ erred in concluding the Plaintiff could return to her past work. The Plaintiff argues the ALJ did not rely on vocational expert testimony to make this determination. Specifically, the Plaintiff argues that the vocational expert testified that the Dictionary of Occupational Titles (DOT) number assigned was not correct, although it was the closest, therefore the ALJ erred in continuing to use this number. The Plaintiff also argues that her past work was performed at the medium level, not the sedentary level. The Defendant argues that the vocational expert testified that the Plaintiff's past work was skilled and sedentary, and that the DOT code used was not incorrect as it was still considered sedentary.

1. Standard

"Past relevant work" includes plaintiff's particular past relevant job, as well as the type

17

of work plaintiff performed in the past as that work is generally performed in the national economy. Andrade v. Secretary of Health and Human Services, 985 F.2d 1045, 1051 (10th Cir. 1993). Substantial evidence that the plaintiff can perform either the past relevant job or the former occupation as performed throughout the nation is sufficient to support a denial of a claim for benefits. Id. at 1051-52.

The ALJ may rely on a vocational expert concerning the physical and mental demands of past relevant work. 20 C.F.R. § 404.1560(b)(1). The vocational expert can "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." Id.

2. ALJ's Decision

The ALJ found that the Plaintiff was able to perform past relevant work. The ALJ based his conclusion on occupational evidence, including the vocational expert's testimony, the Plaintiff's work history, and the Plaintiff's RFC. The ALJ determined the Plaintiff's past work was skilled (SVP 6 or 7) sedentary work.

A review of the transcript shows the vocational expert stated that there was not a job code that fit the job the Plaintiff formerly occupied, but the closest number was a SVP level 6 or 7, and it would still be considered sedentary. The vocational expert stated that the Plaintiff would not be able to work competively based on the limitations imposed by Dr. Mahtre or based on the limitations imposed by Dr. Farrand.

3. Analysis

The ALJ did not err in using the DOT number assigned by the vocational expert.

Although the number assigned did not match up exactly to the Plaintiff's past work, the vocational expert explained that it was the closest match, and that it related to sedentary level work.

Plaintiff argues that her past work was performed at the medium level, not the sedentary level. In support of this argument, Plaintiff argues that she had to lift 20 pounds and sometimes 50 pounds in her past work. However, Plaintiff fails to consider that the conclusion that the Plaintiff can do past work means that she obtained the skills in her past job that can be used in other jobs. 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). Furthermore, it is clear that the ALJ found the Plaintiff could do sedentary work, which is defined as work that involves lifting no more than 10 pounds at a time, and is a job that involves sitting with walking and standing required occasionally. 20 C.F.R. § 404.1567(a).

III. Conclusion

The ALJ's decision is supported by substantial evidence in the record and is based on correct legal standards.

IT IS THEREFORE ORDERED that the decision of the Commissioner be affirmed.

IT IS SO ORDERED this 31st day of January, 2011.

                               s/ Wesley E. Brown
                               Wesley E. Brown
                               United States Senior District Court Judge